IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| HOUSTON BLUEBONNET, L.L.C., | § | BANKRUPTCY NO. H-16-34850-11 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| HOUSTON BLUEBONNET, L.L.C., | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-3270 |
| | § | |
| JPMORGAN CHASE BANK, LLOYD | § | |
| BENTSEN, III, HENRY R. HAMMAN, | § | |
| GEORGE AND MARY JOSEPHINE | § | |
| HAMMAN FOUNDATION, LAURA | § | |
| HAMMAN FAIN, AND ELIZABETH | § | |
| HAMMAN OLIVER, | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses an appeal brought by Houston Bluebonnet, L.L.C. ("Houston Bluebonnet," "Appellant," or "Debtor") from the

> Order Granting Movants' Motion for Approval and Determining Their Informal Proofs of Claim Lack Prima Facie Validity, signed October 10, 2017 ("Order Approving Informal Proof of Claims"), Docket Entry No. 68;[1]

entered in Bankruptcy Case No. H-16-34850-11 (the "Bankruptcy Case") for reasons stated in the Memorandum Opinion (Docket Entry No. 69) signed the same day.[2] For the reasons explained below, the order of the Bankruptcy Court will be affirmed.

---

[1]Notice of Appeal from Order Granting Movants' Motion for Approval and Determining Their Informal Proofs of Claim Lack Prima Facie Validity (Docs. 68 and 69), Docket Entry No. 1-1, p. 1 ¶ 2 (citing Exhibit A). See also Bankruptcy Record on Appeal ("BROA"), Docket Entry No. 4-2, p. 132.

[2]Id. See also BROA, Docket Entry No. 4-2, pp. 133-142.

## I.  **Factual and Procedural Background**[3]

Appellant is the Debtor in the Bankruptcy Case filed on September 30, 2016 (Case No. H-16-34850-11) in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("Bankruptcy Court"), and a successor-in-interest to Humble Oil and Refining Company ("Humble") and to Producers Oil Company ("Producers"). Appellees are representatives of two groups seeking to assert claims against the Debtor: (1) successors-in-interest to an assignment executed in 1913 by John Hamman to Producers ("the Hammans"); and (2) Successors-in-interest to an assignment executed in 1919 by Dan A. Japhet, et al. to Humble ("the Japhets").  In 2004 the Japhets filed a lawsuit against various defendants in the 149th District Court of Brazoria County, Texas (Cause No. 30776-CV), alleging that under a chain of title descending from Dan A. Japhet, they own an undivided 52/60th working interest of the net profits realized by Humble's successors from the operations conducted on 20 acres leased under the 1919 assignment.  In their state court lawsuit the Japhets sought inter alia specific performance of the 1919 lease, judgment for damages and prejudgment interest arising from the defendants' failure to pay the net profits interest when required; and a declaration that, due to defendants' defaults under the lease, the lease terminated

---

[3]See Brief of Appellant Houston Bluebonnet, L.L.C. ("Appellant's Brief"), Docket Entry No. 10, pp. 7-8 ("Factual Background"); Brief of Appellees ("Appellees' Brief"), Docket Entry No. 14, pp. 4-12 ("Statement of the Case"); and Memorandum Opinion, BROA, Docket Entry No. 4-2, pp. 133-137 ("Background").

and the rights reverted back to them.[4]  On March 19, 2009, the Japhets added the Debtor as a defendant in their state court case.[5]

On November 25, 2013, Henry R. Hamman and the George and Mary Josephine Hamman Foundation filed suit in the 149th District Court of Brazoria County, Texas (Cause No. 75054-CV), against various defendants — including the Debtor — claiming to have succeeded to a portion of the net proceeds interest reserved by George Hamman in a 1913 assignment to Producers.  The Hammans' lawsuit sought _inter alia_ damages stemming from the defendants' failure and refusal to perform under the 1913 assignment, and damages and prejudgment interest for all net proceeds due to them thereunder.[6]

On September 30, 2016, the Debtor filed a voluntary Chapter 11 bankruptcy petition, and removed the Japhets' state court lawsuit to the Bankruptcy Court thereby initiating Adversary No. 16-03225.[7] Attached to the Notice of Removal was the entire record of the Japhets' state court lawsuit, including the live pleading, Plaintiffs' Seventh Amended Petition filed on June 1, 2016.[8]  On

---

[4]_See_ Plaintiffs' Seventh Amended Petition, BROA, Docket Entry No. 4-2, pp. 13-25.  _See also_ BROA, Docket Entry No. 4-4, pp. 1-13.

[5]_See_ Memorandum Opinion, BROA, Docket Entry No. 4-2, p. 135.

[6]_See_ Plaintiffs' Second Amended Petition, BROA, Docket Entry No. 4-2, pp. 61-83. _See also_ BROA, Docket Entry No. 4-4, pp. 49-71.

[7]Joint Notice of Removal, BROA, Docket Entry No. 4-4, pp. 80-88.

[8]Plaintiffs' Seventh Amended Petition, BROA, Docket Entry (continued...)

October 5, 2016, the Japhets filed Plaintiffs' Motion for Abstention and for Remand,[9] which the Bankruptcy Court granted for the reasons stated in a December 6, 2016, Memorandum Opinion.[10] On December 12, 2016, the Japhets filed a motion for relief from the automatic stay in order to prosecute their state court action to final judgment.[11] Subsequently, the state court held a trial in March of 2018, resulting in a jury verdict for the Japhets of over $1.3 million.[12]

The Debtor removed the Hammans' state court lawsuit to the Bankruptcy Court on November 9, 2016, thereby initiating Adversary No. 16-03251.[13] The Notice of Removal contained the entire record of the Hammans' state court lawsuit, including the live pleading,

---

[8](...continued)
Nos. 4-2, pp. 13-25, and 4-4, pp. 1-13.

[9]BROA, Docket Entry No. 4-2, pp. 38-53.

[10]BROA, Docket Entry No. 4-5. See also Order, Docket Entry No. 11 in Adversary Case No. 16-3225 ("For the reasons set forth in the Memorandum Opinion issued on this date, this adversary proceeding is remanded to the 149th Judicial District of Brazoria County, Texas."); Memorandum Opinion, BROA, Docket Entry No. 4-2, p. 135 ("The Court abstained from hearing the Japhets' suit and remanded it . . . on December 6, 2016. . .").

[11]Emergency Motion of JPMorgan Chase Bank and Lloyd Bentsen III, Independent Co-Executors of the Estate of Jane Japhet Guinn, et al. for Relief from the Automatic Stay ("Emergency Motion for Relief from Stay"), BROA, Docket Entry No. 4-2, pp. 54-60.

[12]Appellees' Brief, Docket Entry No. 14, pp. 5-6. See also id. at p. 14 & n. 14 ("On March 9, 2018, a unanimous jury verdict in favor of the Japhets awarded damages against Appellant in the amount of $224,251.60, and attorneys' fees in the amount of $141,300.00. The total damages and fees awarded against all defendants (not including prejudgment interest) was in excess of $1.3 million dollars.").

[13]Notice of Removal, BROA, Docket Entry No. 4-4, pp. 89-96.

Plaintiffs' Second Amended Petition filed on September 2, 2016.[14]
On December 16, 2016, the Hammans and the Debtor filed their Joint
Discovery/Case Management Plan in the Bankruptcy Court.[15] On May
16, 2017, the Hammans filed a Motion for Leave to File Plaintiffs'
Third Amended Complaint,[16] and on July 10, 2017, they filed Hammans'
Motion for Partial Summary Judgment Regarding 1920 Agreement,[17]
which the Bankruptcy Court granted on September 15, 2017.[18]

The Debtor listed the Japhets and the Hammans as unsecured
creditors with unliquidated, disputed claims in both its Original
Schedule F and Amended Schedule F, but neither the Japhets nor the
Hammans filed proofs of claim by the claims bar date of February
13, 2017.[19] Instead, on September 7, 2017, the Appellees filed the
Joint Motion of the Japhet and Hamman Parties for Approval of
Certain Pleadings and Other Filings as Their Respective Informal
Proofs of Claim ("Joint Motion").[20] Appellees argued in the Joint
Motion that the filings in their state court lawsuits that the

---

[14]Plaintiffs' Second Amended Petition, BROA, Docket Entry
Nos. 4-2, pp. 61-83, and 4-4, pp. 49-71.

[15]BROA, Docket Entry No. 4-2, pp. 84-91.

[16]BROA, Docket Entry No. 4-2, pp. 92-97. See also Hammans'
Proposed Third Amended Complaint (Adv. No. 16-03251, Doc. No. 11).

[17]BROA, Docket Entry No. 4-2, pp. 98-113.

[18]See Memorandum Opinion, BROA, Docket Entry No. 4-2, p. 135
("The Court granted partial summary judgment in favor of the
Hammans on September 15, 2017. . .").

[19]Id. at 136.

[20]BROA, Docket Entry No. 4-2, pp. 3-12.

Debtor removed to the Bankruptcy Court included detailed written allegations of fact and law stating their claims against the Debtor and seeking payment of their net profits and proceeds interests.[21]

On September 22, 2017, Debtor responded to the Joint Motion arguing that Appellees' filings did not satisfy the Fifth Circuit's requirements for informal proofs of claim stated in <u>Nikoloutsos v. Nikoloutsos (In re Nikoloutsos)</u>, 199 F.3d 233, 236 (5th Cir. 2000).[22] The Debtor also argued that the Japhets' filings were not informal claims because they did not show an intent to pursue a claim in the Bankruptcy Court but, instead, insisted that all disputes be resolved in state court, and that the Hammans' pleadings and filings should not be considered as informal proofs of claim because they were filed after the claims bar date.[23] On September 26, 2017, the Debtor filed Debtor's Supplemental Response to Joint Motion of the Japhet and Hamman Parties for Approval of Certain Pleadings and Other Filings as Their Respective Proofs of Claim (Doc. 59) ("Debtor's Supplemental Response").[24] The Debtor argued that the Appellees' state court filings could not be considered as informal proofs of claim because they were filed with

---

[21]<u>Id.</u> at 10-11.

[22]<u>See</u> Debtor's Response to Joint Motion of the Japhet and Hamman Parties for Approval of Certain Pleadings and Other Filings as Their Respective Proofs of Claim (Doc. 59) ("Debtor's Response to Joint Motion"), BROA, Docket Entry No. 4-2, pp. 118-126. <u>See also</u> Appellees' Brief, Docket Entry No. 14, p. 12.

[23]Debtor's Response to Joint Motion, BROA, Docket Entry No. 4-2, pp. 123-24.

[24]BROA, Docket Entry No. 4-2, pp. 129-131.

the state court, not the Bankruptcy Court, the notices of removal to which they were attached were filed by the Debtor not by the purported claimants and, therefore, could not be considered claims filed on behalf of a creditor, and the removals were not filed within the time period for filing claims against the Debtor.[25]

On October 10, 2017, the Bankruptcy Court issued a Memorandum Opinion concluding that "[t]he Japhets' and Hammans' pleadings and filings in Houston Bluebonnet's bankruptcy case sufficiently constitute informal proofs of claim under the *Nikoloutsos* test,"[26] but that the informal proofs of claim were incomplete and therefore lacked prima facie validity.[27] The Bankrutpcy Court explained that "[w]hile an incomplete proof of claim is not prima facie valid, the claim is not automatically disallowed,"[28] and that if the Debtor objects to the informal proofs of claim, the court would hold a hearing to determine the allowed amount pursuant to 11 U.S.C. § 502(b), and that the burden would be on the Appellees.[29] The Bankrutpcy Court signed its Order Approving Informal Proofs of Claims the same day.[30]

---

[25]Id. at 129-130.

[26]BROA, Docket Entry No. 4-2, p. 138.

[27]Id. at 133 and 141.

[28]Id. at 141.

[29]Id. at 141-142.

[30]BROA, Docket Entry No. 4-2, p. 132.

## II. **Appellate Jurisdiction and Standards of Review**

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court. 28 U.S.C. § 158(a). Because the district court functions as an appellate court, it applies the same standard of review that federal appellate courts use when reviewing district court decisions. See Webb v. Reserve Life Insurance Co. (In re Webb), 954 F.2d 1102, 1103-04 (5th Cir. 1992). This court reviews the Bankruptcy Court's findings of fact for clear error and its rulings on questions of law or mixed questions of law and fact de novo. Id. at 1104. See also Wooley v. Faulkner (In re SI Restructuring, Inc.), 542 F.3d 131, 134-35 (5th Cir. 2008). The Bankrutpcy Court's findings of fact may be reversed only if the court is "left with a firm and definite conviction that a mistake has been committed." Connecticut General Life Insurance Co. v. United Companies Financial Corp. (In re Foster Mortgage Corp.), 68 F.3d 914, 917 (5th Cir. 1995) (citation omitted). The court reviews discretionary decisions of the Bankrutpcy Court for abuse of discretion. Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza), 111 F.3d 1264, 1270 (5th Cir. 1997). A bankruptcy court abuses its discretion when "its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence." Leonard v. Luedtke (In re Yorkshire, LLC), 540 F.3d 328, 331 (5th Cir. 2008)(per curiam) (citation omitted).

### III. **Appeal from Order Approving Informal Proof of Claims**

The issue on appeal is whether the Bankruptcy Court erred in granting Appellees' joint motion to treat certain documents and filings as informal proofs of claim.

### A. **Applicable Law**

Under Federal Rule of Bankruptcy Procedure 3002(a), "[a] secured creditor, unsecured creditor, or equity security holder must file a proof of claim or interest for the claim or interest to be allowed . . ." "A proof of claim is a written statement setting forth a creditor's claim." Fed. R. Bankr. P. 3001(a). "A proof of claim shall conform substantially to the appropriate Official Form." Id.

> A "properly filed" proof of claim, as proscribed by the Judicial Conference in Official Form 10, consists of (1) a creditor's name and address, (2) basis for claim, (3) date debt incurred, (4) amount of claim, (5) classification of claim, and (6) supporting documents.

In re Armstrong, 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005). Informal proof of claims is a common law doctrine whereby courts treat pre-bar date filings of a creditor that do not conform to the formal claim filing requirements of the Federal Rules of Bankruptcy Procedure as informal proofs of claim that can be amended to conform to the rules. Barlow v. M.J. Waterman & Associates, Inc. (In re M.J. Waterman & Associates, Inc.), 227 F.3d 604, 608-09 (6th Cir. 2000). The Fifth Circuit has adopted the following five-part

-9-

test for determining whether a document can be considered an informal proof of claim:

    (1)   the claim must be in writing;

    (2)   the writing must contain a demand by the creditor on the debtor's estate;

    (3)   the writing must evidence an intent to hold the debtor liable for such debt;

    (4)   the writing must be filed with the bankruptcy court; and

    (5)   based upon the facts of the case, allowance of the claim must be equitable under the circumstances.

In re Nikoloutsos, 199 F.3d at 236 (adopting test articulated in Reliance Equities, Inc. v. Valley Federal Savings and Loan Association (In re Reliance Equities, Inc.), 966 F.2d 1338, 1345 (10th Cir. 1992)). The plaintiff in Nikoloutsos argued that the complaint she filed in an adversary proceeding amounted to an informal proof of claim; the Bankruptcy Court and the District Court disagreed, but the Fifth Circuit agreed. Id. at 237. The Fifth Circuit explained that the first four elements were important to provide notice not just to the debtor, but also to the bankruptcy court, and that those elements had clearly been met. Id. at 236. Observing that the debtor had filed bankruptcy in an effort to avoid paying a judgment for maliciously assaulting his wife, the Fifth Circuit then held that despite having applied the appropriate legal rule, the district court abused its discretion in holding that the equities weighed against treating the adversary complaint as an informal proof of claim. Id. at 237.

## B. Application of the Law to the Record

Appellees' Joint Motion asked the Bankrutpcy Court to accept as informal proofs of claim pleadings and other filings from the Japhets' and the Hammans' state court lawsuits that the Debtor removed to Bankrutpcy Court. Asserting that they were the only non-insider creditors of the Debtor, and that they had aggressively pursued their claims against the Debtor, Appellees asked the Bankruptcy Court to recognize the following documents and filings as informal proofs of claims:

- the pleadings of the Japhets, orders of the District Court of Brazoria County, Texas and other matters included in the record filed in Adv. No. 16-03225 with the Notice of Removal (Doc. No. 1)[;]

- the Japhets' Motion for Abstention and for Remand (Adv. No. 16-03225, Doc. No. 2) and the exhibits admitted into evidence at the hearing on said Motion[;]

- the Japhets' Motion for Relief from the Automatic Stay (Case No. 16-34850, Doc. No. 21)[;]

- the pleadings of the Hammans, orders of the District Court of Brazoria County, Texas and other matters included in the record filed in Adv. No. 16-03521 with the Notice of Removal (Doc. No. 1)[;]

- the Hammans' Motion for Leave to File Third Amended Complaint (Adv. No. 16-03251, Doc. No. 11)[;]

- the Hammans' proposed Third Amended Complaint (Adv. No. 16-03251, Doc. No. 11-1)[;]

- the Hammans' Motion for Summary Judgment (Adv. No. 16-03251, Doc. No. 19)[.][31]

---

[31]Joint Motion, BROA, Docket Entry No. 4-2, p. 4.

Appellant argues that Appellees' documents and filings do not constitute informal proofs of claim because (1) they do not contain the substance of proofs of claim; (2) they were not timely filed with the Bankruptcy Court; (3) the Japhet filings are contrary to any informal claim; (4) the Hamman filings are late; and (5) recognition of the Appellees' documents and filings as informal proofs of claim would not be equitable. Appellant also argues that the Bankruptcy Court erred by considering filings by the Debtor in determining whether Appellees timely filed an informal proof of claim. Applying the five <u>Nikoloutsos</u> factors to the record, the court concludes that the Bankruptcy Court's Order Approving Informal Proofs of Claims should be affirmed.

### 1.    The Claims Were in Writing

Appellant does not dispute that the documents and filings that Appellees moved the Bankruptcy Court to accept as informal proofs of claim were in writing.[32]

### 2.    The Writings Contained Demands on the Debtor's Estate

Appellant argues that since the notices of removal were filed by it, not by Appellees, the state court pleadings attached to the notices of removal cannot be considered as demands by the creditor

---

[32]Reply Brief of Appellant Houston Bluebonnet, L.L.C. ("Appellant's Reply Brief"), Docket Entry No. 17, pp. 4-5 ("As detailed in the Brief of Appellant, all but the writing requirement is at issue. . .").

against the Debtor and its bankruptcy estate.[33] Appellant argues that "[i]t is axiomatic that a document filed by a debtor cannot reasonably be construed as a demand by the creditor on the debtor's estate."[34] Appellees respond that

> the best proof that Appellees' pleadings in the Japhet and Hamman suits constitute[] claims against the Debtor's estate is Appellant's own admission in its Notices of Removal:
>
>> The State Court Action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)[(A),(B),(C) and (O) and is related to the Bankruptcy Case.] . . . The claims and causes of action in the State Court Action have a clear and direct impact on interests and property of the Debtor's estate under 11 U.S.C. § 541. <u>Claims are being asserted against the Debtor in the State Court Action</u>. [underscoring supplied] [The Debtor has interest in two producing oil and gas wells under an Operating Agreement with the working interest owners of the lease, who are also named as defendants. Among their claims, Plaintiffs are seeking that all defendants, including Debtor, account to Plaintiffs for their disputed, claimed net profits interest, and that the sublease be terminated. At a minimum, the State Court Action "relates to" the Bankruptcy Case because it is inextricably linked to the Bankruptcy Case and could result in rulings that would significantly affect the administration of the estate and the disposition of assets of the estate."]
>
> This demonstrates in Appellant's own words the obvious fact it now tries to obfuscate: that it knew from the outset it was removing <u>claims of Appellees against the Debtor and its estate</u>.[35]

---

[33]Appellant's Brief, Docket Entry No. 10, p. 15.

[34]<u>Id.</u>

[35]Appellees' Brief, Docket Entry No. 14, pp. 14 (quoting Joint Notice of Removal, Docket Entry No. 4-4, p. 82 ¶¶ 3 and 5 (Japhet (continued...)

-13-

Plaintiffs' Seventh Amended Petition filed in in the Japhets' state court case and removed by the Debtor to the Bankruptcy Court stated five claims against the defendants, including the Debtor, for (1) title and possession of property, (2) breach of contract and specific performance, (3) declaratory judgment, (4) breach of duty to pay oil and gas proceeds, and (5) partial termination of the 1919 Agreement.[36] The petition prayed for judgement as follows:

1.  for title and possession of Dan A. Japhet's 52/60 interest in and to the net profits interest reserved in the 1919 Assignment, as alleged above, and that their title be quieted as against the claims asserted by Defendants;

2.  [f]or a declaration that the 1919 Assignment has terminated [and that] any and all rights therein granted have reverted to Plaintiffs with respect to 52/60 of, the Hogg-Japhet Lease, except for 40,000 square feet around any well producing oil;

3.  for damages for breach of duty and/or breach of contract and/or for specific performance, as alleged above;

4.  for declaratory judgment as alleged above;

5.  for prejudgment interest as alleged above;

6.  for costs and attorney's fees as alleged above; and

7.  for all other relief to which they are entitled.[37]

---

[35](...continued)
lawsuit); and Notice of Removal, Docket Entry No. 4-4, p. 90-91 ¶ 3 and 5 (Hamman lawsuit).

[36]Plaintiffs' Seventh Amended Petition, Docket Entry No. 4-2, pp. 18-22 ¶¶ 23-30.

[37]Id. at 23.

Plaintiffs' Second Amended Petition filed in in the Hammans' state court case and removed by the Debtor to the Bankruptcy Court stated three claims against the defendants, including the Debtor, for (1) declaratory judgment, (2) breach of contract and specific performance, and (3) breach of duty to pay proceeds.[38] The petition and prayed for judgement as follows:

1. for declaratory judgment that the Defendants are successors of Producers under the 1913 Assignment and that they and their successors are bound by it to account for an[d] to pay the Plaintiffs their respective shares of the Reserved N[et] P[roceeds] I[interest];

2. for damages for breach of duty and/or breach of contract and/or for specific performance, as alleged above;

3. for prejudgment interest as alleged above;

4. for costs and attorney's fees as alleged above; and

5. for all other relief to which they are entitled.[39]

The petitions filed by the Japhets and by the Hammans in their respective state court lawsuits constitute written pre-petition demands on the Debtor that became demands on the Debtor's estate when the Debtor filed its Chapter 11 petition. See Mata v. Schoch, 337 B.R. 138, 142 (S.D. Tex. 2005) (recognizing removal of state court lawsuit as an informal proof of claim in debtor's Chapter 11 proceeding).

---

[38]Plaintiffs' Second Amended Petition, Docket Entry No. 4-2, pp. 72-73 ¶¶ 26-28.

[39]Id. at 74.

-15-

Nevertheless, Appellant argues that the state court petitions cannot be considered informal proofs of claim because they do not contain the substance of proofs of claim.[40] Asserting that the Appellees' state court petitions "describe causes of action related to mineral rights disputes but without stating a monetary pre-petition claim or giving the basis on which to calculate such a claim,"[41] Appellant argues that

> the Japhets and Hammans never submitted proposed individual proofs of claim nor have they provided alleged claim amounts or any other information regarding individual claimants. The Japhet and Hamman filings do not list the claimants, amounts claimed, net amounts claimed after deducting funds held elsewhere, or any other information required for proofs of claim.[42]

It is undisputed that none of the filings that Appellees asked the Bankruptcy Court to consider as informal proofs of claims stated the amount of the claims being asserted by each individual claimant. The Bankruptcy Court concluded that the Appellees' writings apprised it of the existence and nature of the claims, but did not apprise it of the individual claimants or the amounts of their individual claims.[43] But Appellant has not cited any

---

[40]Appellant's Brief, Docket Entry No. 10, pp. 13-14.

[41]Id. at 13.

[42]Id. at 14.

[43]See Memorandum and Order, BROA, Docket Entry No. 4-2, p. 141 ("[T]he Japhets' and Hammans' informal proofs of claim do not include the dollar amount of their claims nor the specific creditors bringing each particular claim." (September 27, 2017 (continued...)

-16-

authority holding that a writings' failure to state the amount of the claim is fatal to its being considered an informal proof of claim. Instead, Appellant has cited cases holding that the amount of a claim only needs to be cited in such a writing if the amount is ascertainable.[44]  See Hefta v. Official Committee of Unsecured Creditors (In re American Classic Voyages Co.), 405 F.3d 127, 132 (3d Cir. 2005) ("In order to constitute an informal proof of claim, the alleged demand must be sufficient to put the debtor and/or the court on notice as to 'the existence, nature and amount of the claim (if ascertainable).'")(quoting Charter Co. v. Dioxin Claimants (In re Charter Co.), 876 F.2d 861, 863 (11th Cir. 1989)). See also In re Charter Co., 876 F.2d at 864) ("despite the fact that the amount of the claim was not ascertainable, the motion constituted an informal proof of claim").

As explained in the Japhets' motions to abstain and remand and to lift automatic stay, when the Debtor filed its Chapter 11 petition, the state court had already held the Debtor liable for damages, had not determined the amount of damages, but was poised

---

[43] (...continued)
Hearing at 2:16;12 P.M.).  These informal proofs of claim are thus incomplete, do not substantially conform to the appropriate Official Form, and are not prima facie valid.").

[44] Appellant's Brief, Docket Entry No. 17, p. 6 n.12 ("The Third, Ninth, and Eleventh Circuits agree that for a document to be an informal claim, the alleged demand must put the debtor and court on notice of the existence and amount of the debt (if ascertainable).").

to do so.[45]    Moreover, as evidenced by filings in the Hamman
adversary case, e.g., the Joint Discovery/Case Management Plan
filed by the Hammans and the Debtor,[46] the Hammans' Motion for Leave
to File Plaintiffs' Third Amended Complaint filed in their
adversary case,[47] and by the Hammans' Motion for Partial Summary
Judgment Regarding 1920 Agreement,[48] the issues of liability and
damages in that case were before the Bankruptcy Court.  Because the
state court petitions in the Japhet and the Hamman lawsuits that
were removed to the Bankruptcy Court stated numerous causes of
action against the Debtor and sought payment of net profits and
proceeds allegedly due to the Appellees under various leases and
agreements, the failure of the state court petitions to specify the
amount of the claims demanded from the Debtor's estate is not fatal
to their being considered as informal proofs of claim.  See Mata,
337 B.R. at 142 ("Plaintiffs' Fourth Amended Complaint constitutes
a written demand on the debtor's estate as Plaintiffs state a cause
of action against Club Zippers and seek damages for (1) medical
expenses, (2) pain and mental anguish, (3) funeral and burial
expenses, and (4) loss of future earning capacity.").

---

[45]Plaintiffs' Motion for Abstention and Remand, BROA, Docket
Entry No. 4-2, pp. 39-45 ¶¶ 1-10; Emergency Motion for Relief from
Stay, BROA, Docket Entry No. 4-2, pp. 55-57 ¶¶ 1-12.

[46]BROA, Docket Entry No. 4-2, pp. 84-91.

[47]BROA, Docket Entry No. 4-2, pp. 92-97.

[48]BROA, Docket Entry No. 4-2, pp. 98-113.

-18-

3. **The Writings Evidenced Intent to Hold the Debtor Liable**

The removed state court petitions not only contained demands on the Debtor's estate, but they and the Appellees' subsequent filings in the Bankruptcy Court evidence the Appellees' intent to hold the Debtor liable for payment of net profits and proceeds allegedly due to them under various leases and agreements. Subsequent filings that evidenced the Appellees' intent to hold the Debtor liable include inter alia the Japhets' Motion for Abstention and for Remand,[49] the Japhets' motion to lift the automatic stay to prosecute their state court lawsuit to final judgment,[50] the Joint Discovery/Case Management Plan filed by the Hammans and the Debtor in their adversary case,[51] the Hammans' Motion for Leave to File Plaintiffs' Third Amended Complaint,[52] and the Hammans' Motion for Partial Summary Judgment Regarding 1920 Agreement.[53]

The Japhets' Motion for Abstention and for Remand asserted:

> Movants are the heirs and assignees of Daniel A. Japhet, the original recipient of the net profits interest reserved in the 1919 Assignment. The Defendants are successors in interest of Humble and the Brazoria County

---

[49]BROA, Docket Entry No. 4-2, pp. 40-45, ¶¶ 7-10 ("Factual and Procedural Background").

[50]Emergency Motion for Relief from Stay, BROA, Docket Entry No. 4-2, pp. 54-60, especially pp. 56-57 ¶¶ 4-12 ("Factual and Procedural Background").

[51]BROA, Docket Entry No. 4-2, pp. 84-91.

[52]BROA, Docket Entry No. 4-2, pp. 92-97.

[53]BROA, Docket Entry No. 4-2, pp. 98-113.

District Court and the First Court of Appeals have held
that they are bound by the 1919 Assignment to account for
net profits and to pay 52/60 of 25% of same to Movants,
plus attorney's fees and interest. A one-day non-jury
trial was preferentially set on October 3, 2016[,] to
determine the amount of net profits due from each
Defendant to each Plaintiff, the amount of pre-judgment
interest, and the amount of attorney's fees due from each
Defendant to each Plaintiff. . .[54]

In their motion the Japhets argued, <u>inter alia</u>, that "it would be
more efficient to allow judgment to be entered in the state court,
with enforcement of any judgment against [the] Debtor left in this
Court[, i.e., the Bankruptcy Court],"[55] and that

[r]emand and abstention will promote comity. Especially
in a case like this where an action has been pending in
state court for almost 12 years, there has been an
interlocutory appeal and dispositive summary judgment
orders have disposed of all liability claims against the
Defendants, and was set for trial.[56]

The Japhets also argued that

[i]f . . . the lawsuit is not remanded, Plaintiff would
be forced to forego its chosen forum and its right to a
prompt trial setting,"[57] and that "[g]reater efficiency
would be achieved in state court where a single judge
would finish the job of managing a suit pending for 12
years on its docket.[58]

---

[54]BROA, Docket Entry No. 4-2, p. 41 ¶ 9.

[55]<u>Id.</u> at 48 ¶ 15.

[56]<u>Id.</u> at 50 ¶ 15.

[57]<u>Id.</u> at 51 ¶ 15.

[58]<u>Id.</u> at 51 ¶ 17.

The Japhets' motion to lift the automatic stay sought leave to prosecute their state court lawsuit to final judgment.[59]   The Japhets' asserted reasons for lifting the stay included a summary of the case history that not only described the nature of the claims asserted against the Debtor, and but also characterized the Debtor's bankruptcy filing and removal of the Japhets' state court lawsuit as a desperate attempt to avoid having to pay their claims:

5.     The Brazoria County Action was filed in 2004 and arises out of a 1919 Assignment whereby Dan A. Japhet (and others) assigned a 20-acre oil and gas lease in the West Columbia Field in Brazoria County to Humble Oil & Refining Company, reserving a net profits interest.

6.     Movants are the heirs and assignees of Daniel A. Japhet, the original recipient of the net profits interest reserved in the 1919 Assignment.   The Defendants are successors in interest of Humble and the Brazoria County District Court and the First Court of Appeals have held that they are bound by the 1919 Assignment to account for net profits and to pay 52/60 of 25% of same to Movants, plus attorney's fees and interest.

7.     The filing of this Chapter 11 case and the removal of the Brazoria County suit to the Bankruptcy Court on the eve of trial was yet another desperate attempt of the Debtor and Removing Parties to avoid their day in Court.

8.     The Brazoria County District Court granted summary judgment as to liability against all Defendants on November 5, 2015.   The case has already been set for trial on damages and attorney's fees four times in 2016:

---

[59]Emergency Motion for Relief from Stay, BROA, Docket Entry No. 4-2, p. 55 ¶ 1.

a. on February 1, 2016 (continued on Debtors' and Removing Parties' motion),

b. May 2, 2016 (upset by Warbonnet's Chapter 7 filing).

c. August 1, 2016 (continued on Debtors' and Removing Parties' motion), and

d. October 3, 2016 (upset by Debtor's Chapter 11 filing).

9. The Brazoria County Action was unsuccessfully mediated on September 12, 2016.

10. The Brazoria County Action was removed to this Court on September 30, 2016 (Adv. No. 16-03225; Doc. No. 1).

11. Movants filed their Motion for Abstention and Remand on October 5, 2016 (Adv. No. 16-03225; Doc. No. 2).

12. The Court entered its Order remanding Brazoria County Action to the 149th District Court of Brazoria County, Texas on December 6, 2016 (Adv. No. 16-03225; Doc. No. 11).[60]

The Japhets' motions for abstention and remand and to lift the automatic stay both evidence the Japhets' intent to hold the Debtor liable because they both state explicit demands against the Debtor and the estate. The motion to lift the automatic stay also explained that the Debtor's liability had already been determined by the state court, the purpose of the motion was to allow the state court to determine the amount of damages, and "[n]o execution or other process to collect any monetary awards will be sought absent further order of this Court. . ."[61]

---

[60]Id. at 56-57 ¶¶ 5-12.

[61]Id. at 55 ¶ 1.

Appellant argues that the Japhets' filings do not constitute an informal claim because "[t]he Japhets' position throughout their filings has been an insistence that the litigation and their claims be resolved entirely in state court."[62]   But courts faced with similar issues have held that a motion to lift the automatic can indicate an intent to hold the debtor liable.   See Mata, 337 B.R. at 143 (citing Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.), 761 F.2d 1374, 1382 (9th Cir. 1985), and In re Charter Co., 876 F.2d at 866).   In In re Pizza of Hawaii, the Ninth Circuit found that a creditor's request for relief from the automatic stay to join the debtor as a defendant in a civil case, coupled with the complaint filed in that civil case, constituted an informal proof of claim.   761 F.2d at 1382.   The court explained that "the request for relief from the automatic stay, together with the other documents [the creditor] filed, sufficiently 'state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable.'" Id. (citation omitted).   In In re Charter Co., 876 F.2d at 866, the Eleventh Circuit similarly approved as an informal proof of claim a motion for relief from the automatic stay coupled with a subsequent stipulation that the claimants would resolve their claims in bankruptcy.   The court explained that moving for relief from the bankruptcy stay to pursue a tort claim showed a clear intent to hold the debtor liable.   Id. at 863-66.

---

[62]Appellant's Brief, Docket Entry No. 10, p. 16.

## 4. The Writings Were Filed with the Bankruptcy Court

Appellant does not dispute that the writings the Appellees sought to have recognized as informal proofs of claim were all filed with the Bankrutpcy Court. Nevertheless, citing 11 U.S.C. § 501(c) and Federal Rule of Bankruptcy Procedure 3004, Appellant argues that the Appellees' filings cannot be considered as informal proofs of claim because "the notices of removal and attached pleadings were not filed within the time period allowed for such claims."[63] 11 U.S.C. § 501(c) allows the trustee or debtor-in-possession to file a proof of claim "[i]f a creditor does not timely" do so, and Federal Rule of Bankruptcy Procedure 3004 provides that "[i]f a creditor does not timely file a proof of claim . . . the debtor or trustee may file a proof of claim within 30 days after the expiration of the time for filing claims." Appellant argues that the writings Appellees sought to have considered informal proofs of claim should not be so considered because

> [t]he removals and the attached state court pleadings were filed by Houston Bluebonnet on September 30, 2016[,] and November 9, 2016, long before the Bar Date. Thus, neither the Japhets nor the Hammans filed proofs of claim before the Bar Date, nor did Houston Bluebonnet file any state court pleadings (or any other document construed as an informal claim) within the 30-day window after the Bar Date.[64]

---

[63] _Id._ at 15.

[64] _Id._ at pp. 15-16. <u>See also</u> Appellant's Reply Brief, Docket
(continued...)

Appellant also argues that even though the Hammans filed three documents in the Bankruptcy Court that arguably satisfy the requirements for informal proofs of claim, i.e., a motion for leave to file a third amended complaint, a third amended complaint, and a motion for summary judgment, because these filings were dated May 16 and July 10, 2017, roughly three to five months after the February 13, 2017, bar date, they were filed too late to be accepted as informal proofs of claim.[65]

Appellant cites no controlling authority in support of its arguments that the writings Appellees sought to have considered as informal proofs of claim should not be so considered because they were not timely filed, and the court's own research indicates that this argument is contrary to the Fifth Circuit's long standing posture with respect to informal proofs of claim. As stated by a Bankruptcy Court over thirty years ago:

> The United States Court of Appeals for the Fifth Circuit has taken a liberal posture regarding recognition of informal Proofs of Claims and amendments thereto. The Court held that knowledge of the creditor's claim within the period for filing Proofs of Claim as set by the Court was sufficient basis for a later amendment. See Walsh v. Lockhart, 339 F.2d 417 (5th Cir. 1964) (trustee's institution of suit to cancel creditor's note sufficient basis for later amendment); accord Fausett v. Murner, 402 F.2d 961, 963 (5th Cir. 1968) (if court informed by its own files of existence, nature, and amount of claim,

---

[64](...continued)
Entry No. 17, p. 5 ("neither the Japhets nor the Hammans filed informal claims before the Bar Date, nor did Houston Bluebonnet file any informal claim on their behalf within the 30-day window permitted after the Bar Date.").

[65]Appellant's Brief, Docket Entry No. 10, p. 17.

-25-

there is no bar to prevent court from permitting proof of claim to be amended to meet requirements as to form).

In re William B. Wilson Manufacturing Co., 59 B.R. 535, 541 (W.D. Tex. 1986). As the Fifth Circuit explained in Nikoloutsos, 199 F.3d at 237, the reason for allowing an informal proof of claim is to cure procedural defects made by creditors in pursuing claims against a bankruptcy estate. Although Appellees did not comply with every aspect of bankruptcy law procedure, "that is true every time a creditor relies on an informal proof of claim as opposed to a formal one." Id. Appellees' entire state court cases were filed in the Bankruptcy Court via the Debtor's Notices of Removal which were filed on September 30, 2016, with respect to the Japhets' claims, and on November 9, 2016, with respect to the Hammans' claims. The filing of the notices of removal were sufficient to satisfy this fourth prong of the Nikoloutsos test. See Mata, 337 B.R. at 142 ("[T]he removal of Plaintiffs' state court claim constitutes a filing of Plaintiffs' complaint in satisfaction of the fourth element of Nikoloutsos because the complaint was filed as part of the Debtor's Notice of Removal of an Adversary Proceeding."). Since, moreover, subsequent filings in both the Japhet and the Hamman adversary cases kept the Bankruptcy Court and the Debtor apprised of the Appellees' demands upon the Debtor and intent to hold the Debtor's estate liable before, during, and after the period for filing Proofs of Claim, Appellant's argument that the filings were untimely lacks merit.

5.  The Bankrutpcy Court Did Not Abuse It's Discretion by
    Concluding that Recognition of the Informal Proofs of
    Claims Is Equitable

Appellant argues that the Bankruptcy Court abused its discretion by analyzing the fifth prong of the <u>Nikoloutsos</u> test — whether allowance of the claim would be equitable under the circumstances — by focusing solely on the effect that not recognizing Appellees' informal claims would have had upon the Appellees.[66] Asserting that "[t]he Bankruptcy Court balances this effect against the fact that Houston Bluebonnet had notice of the state law causes of action against it,"[67] Appellant argues that "[b]y focusing on notice in analyzing the equitable prong, the Bankruptcy Court failed to address Houston Bluebonnet's equitable considerations, which, as stated below, are significant."[68] Appellant argues that equities the Bankruptcy Court failed to consider include the fact that the Appellees are represented by well-qualified counsel and were well aware of the Bar Date but waited until the eve of the disclosure statement hearing to take any action regarding their potential, unfiled claims. Citing <u>In re Egan</u>, 526 B.R. 111, 114 (Bankr. S.D.N.Y. 2015), Appellant argues that "[w]hen considering the equitable prong, courts are less likely to use the informal proof of claim doctrine when a creditor

---

[66]<u>Id.</u> at 18.

[67]<u>Id.</u>

[68]<u>Id.</u>

is represented by counsel and when permission of the informal claim 'would significantly affect the payout to creditors with timely filed claims.'"[69]    Appellant argues that "[b]oth of these considerations weigh against the allowance of an informal claim."[70] Appellant argues that it has been able to raise sufficient funds to pay its creditors in full based on the assumption that the Appellees were not filing proofs of claim, and that recognition of their informal proofs of claim would unfairly delay resolution of the bankruptcy case by making its filed plan infeasible, and sending it back to the drawing board on its plan and disclosure statement.[71]

Asserting that they are the Debtor's only non-insider creditors and that they have diligently pursued their respective claims in the Bankruptcy Court as well as in the District Court of Brazoria County, Texas, Appellees respond that

> Debtor should not be heard to complain that it did not
> know that Appellees had [] intended to assert their
> claims against the Debtor, especially since the
> bankruptcy petition was filed by Appellant to avoid
> trial.  Moreover, to allow Debtor's insiders and their
> attorneys to be the only parties to receive distributions
> from the Debtor's estate would be a travesty, totally at
> odds with the core concepts in bankruptcy: providing
> debtors with a fresh start, or the basic means of

---

[69]Id.

[70]Id.

[71]Id. at 19.

survival, while also providing for the "equality of distribution among unsecured creditors."[72]

In concluding that allowance of Appellees' informal proofs of claim would be equitable under the circumstances, the Bankruptcy Court reasoned as follows:

> [T]he Japhets and Hammans, persistently prosecuted their claims against Houston Bluebonnet throughout the existence of the state court and bankruptcy proceedings. Additionally, each of the adversary proceedings stemming from Houston Bluebonnet's bankruptcy case (Case Nos. 16-3251, 16-3225) deal solely with the Japhets' and Hammans' claims against Houston Bluebonnet. While the Japhets' and Hammans' attorney failed to file a formal proof of claim, Houston Bluebonnet still received ample notice of the Japhets' and Hammans' intentions to assert their claims against it. . .
>
> Most importantly, this bankruptcy case was commenced by Houston Bluebonnet to avoid the effect of the Japhets' and Hammans' claims. It would be most inequitable to allow those claims — well known to Houston Bluebonnet and the Court — to be avoided on a technical basis."[73]

The equities of this case are analogous to those at issue in Nikoloutsos, 199 F.3d at 237, where the Fifth Circuit explained that concern with the burdens on the Debtor were misplaced in light of the fact that the debtor filed bankruptcy in an effort to avoid paying a state court judgment. Houston Bluebonnet commenced its bankruptcy case only after the state court found it liable to the Japhets, but before the state court determined the amount of

---

[72]Appellees' Brief, Docket Entry No. 14, p. 22 (citation omitted).

[73]Memorandum Opinion, pp. 7-8, BROA, Docket Entry No. 4-2, pp. 130-40.

damages for which Houston Bluebonnet was liable. Appellant does not dispute that the Japhets and the Hammans are the only non-insider creditors, and that proceedings that have occurred since the Debtor filed bankruptcy include a trial held in March of 2018, resulting in a jury verdict for the Japhets of over $1.3 million.[74] The amount in question is substantial, and denying Appellees the ability to pursue their claims against the Debtor would be extremely harsh. Unlike the claimant in <u>Nikoloutsos</u>, 199 F.3d at 237, who was unsophisticated and unaware of the bar date set by the Bankruptcy Court, Appellees have been represented by counsel throughout both the state court and the bankruptcy court proceedings and have not argued that they or their counsel was unaware of the bar date set by the Bankruptcy Court. Although the difference between the <u>Nikoloutsos</u> claimant and the Appellees weighs against recognizing the Appellees' informal proofs of claim, this difference does not outweigh the prejudice that failing to recognize the informal proofs of claim would cause the Appellees.

Appellant's argument that it has been able to raise sufficient funds to pay its creditors in full based on the assumption that the Appellees were not filing proofs of claim, and that recognition of

---

[74]Appellees' Brief, Docket Entry No. 14, pp. 5-6. <u>See also</u> <u>id.</u> at p. 14 & n. 14 ("On March 9, 2018, a unanimous jury verdict in favor of the Japhets awarded damages against Appellant in the amount of $224,251.60, and attorneys' fees in the amount of $141,300.00. The total damages and fees awarded against all defendants (not including prejudgment interest) was in excess of $1.3 million dollars.")).

Appellees' informal proofs of claim would unfairly delay resolution of the bankruptcy case by making its filed plan infeasible, weighs only slightly in favor of Appellant because Appellant has neither argued nor presented any evidence capable of establishing that the Debtor or any other creditors will be prejudiced by recognition of the Appellees' informal proofs of claims. If the Appellees' claims have merit, disallowing them would create a windfall for the remaining creditors, and if the claims have no merit, the Debtor will still have the opportunity to object to them, and the Bankruptcy Court will have the opportunity to deny them. Under these circumstances, the court concludes that the Bankruptcy Court did not abuse its discretion by concluding that recognition of the Appellees' informal proofs of claims is equitable.

### IV. Conclusions and Order

For the reasons stated in § III, above, the Bankruptcy Court's Order Granting Movants' Motion for Approval and Determining Their Informal Proofs of Claim Lack Prima Facie Validity, signed October 10, 2017 ("Order Approving Informal Proof of Claims"), Docket Entry No. 68; is **AFFIRMED**.

**SIGNED** at Houston, Texas, on this the 14th day of June, 2018.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-31-